## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

COLLEN M. TROUTMAN,

       Plaintiff,

vs.                               No.  02cv0473 DJS

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

## MEMORANDUM OPINION

This matter is before the Court on Plaintiff's (Troutman's) Motion to Reverse and Remand for a Rehearing [**Doc. No. 13**], filed January 24, 2003, and fully briefed on March 21, 2003.  The Commissioner of Social Security issued a final decision denying Troutman's claim for supplemental security income benefits.  Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds the motion to remand is not well taken and will be DENIED.

### I.  Factual and Procedural Background

Troutman, now fifty-eight years old, filed her application for supplemental security income benefits on September 2, 1999, alleging disability since June 1, 1997, due to asthma, severe depression, short memory span, impaired motor skills, and alcoholism.  Troutman has a high school education and has completed some college courses.  Tr. 38.  Troutman's past relevant work was as an advertising distributor.  On November 14, 2001, the Commissioner's Administrative Law Judge (ALJ) denied benefits, finding that Troutman' impairments were severe

but did not singly or in combination meet or equal in severity any of the disorders described in the Listing of Impairments, Subpart P, Appendix 1. The ALJ further found Troutman retained the residual functional capacity (RFC) for simple, unskilled work through the light exertional level. Tr. 24.  As to her credibility, the ALJ found Troutman's allegations regarding her limitations were not totally credible. Tr. 23.  Troutman filed a Request for Review of the decision by the Appeals Council.  On March 19, 2002, the Appeals Council denied Troutman's request for review of the ALJ's decision.  Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes.  Troutman seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence of record must be considered in making those findings, *see Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989).  "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative

2

evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).  Therefore, while

the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States*

*Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must

meticulously examine the record as a whole, including anything that may undercut or detract from

the ALJ's findings, in order to determine if the substantiality test has been met.  *See Washington*

*v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

### III.  Discussion

In order to qualify for disability insurance benefits or supplemental security income, a

claimant must establish a severe physical or mental impairment expected to result in death or last

for a continuous period of twelve months which prevents the claimant from engaging in

substantial gainful activity.  *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing

42 U.S.C. §423(d)(1)(A)).  The regulations of the Social Security Administration require the

Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.

20 C.F.R. §§ 404.1520 (a-f) and 416.920.  The sequential evaluation process ends if, at any step,

the Commissioner finds the claimant is not disabled.  *Thompson v. Sullivan*,  987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show she is

not engaged in substantial gainful employment, she has an impairment or combination of

impairments severe enough to limit her ability to do basic work activities, and her impairment

meets or equals one of the presumptively disabling impairments listed in the regulations under 20

C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20

C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to

the Commissioner to show the claimant is able to perform other substantial gainful activity

considering her residual functional capacity, age, education, and prior work experience. *Id.*

      In support of her motion to reverse, Troutman makes the following arguments: (1)  the

ALJ erred in finding that her past relevant work constituted substantial gainful activity; and (2) the

ALJ improperly assessed the materiality of her alcohol abuse.

**Past Relevant Work**

      Troutman contends that the ALJ erred when he found she could perform her past relevant

work as an advertising distributor, an unskilled light occupation.  Troutman claims that under the

regulations the ALJ was required to find that her former work was substantial gainful activity.

Troutman argues that her earnings from her job as an advertising distributor were not enough to

qualify as substantial gainful activity.  Troutman also claims her work was "sporadic enough that

substantiality truly was an issue."  *See* Pl.'s Mem. in Supp. of Mot. to Reverse at 4.

      Troutman's past work experience qualifies as past relevant work if it was done within the

last fifteen years, lasted long enough for her to learn to do it, and she earned enough money to be

considered substantial gainful activity.  *See* 20 C.F.R. § 416.965(a); *Norris v. Apfel*, No. 99-6167,

2000 WL 504882, at \*\*4 (10th Cir. April 28, 2000)(unpublished disposition).

      The evidence indicates Troutman worked as an advertising distributor from November

1985 through July 1989, twenty hours per week.  Tr. 86.  Part-time work may be considered

substantial gainful activity.  *See* 20 C.F.R. § 416.972(a).  For the years between 1985-1989 the

presumptive earning amount necessary to qualify as substantial gainful activity is $300 per month.

20 C.F.R. § 416.974(b)(2).  Troutman concedes that she performed the work of advertising

distributor at a level consistent with substantial gainful activity in 1988 and 1989.  *See* Pl.'s Mem. in Supp. of Mot. to Reverse at 4.

"Where there is no evidence other than the amounts earned over a specific period, the determination of substantial gainful activity may be made solely on the basis of the regulatory earnings standards." *Franco v. Chater*, No. 96-5027, 1996 WL 559641, at *1, (10th Cir. Oct. 2 1996)(unpublished disposition).  However, "where other evidence is offered, the presumption established by the regulations is rebuttable." *Id.*  In this case, Troutman did not offer any evidence to rebut the presumption that she had performed substantial gainful activity in 1988 and 1989.  Moreover, other than to move the Court to reverse the ALJ's finding for what she perceives as error, Troutman does not offer any evidence rebutting the regulatory earnings standards.  Therefore, the ALJ did not err in relying on the regulatory earnings standards to find that Troutman's work as an advertising distributor was substantial gainful activity and thus qualified as past relevant work.

Troutman contends that her "showing that her work was sporadic" required the ALJ to consider other factors.  The Court will construe this statement as Troutman's attempt to argue that this evidence was sufficient to rebut the regulatory earnings standards presumption.  However, Social Security Ruling 82-62, which addresses the procedures for determining past relevant work, states "[a]n individual who has worked only sporadically or for brief periods of time during the 15-year period, may be considered to have no relevant work experience."  SSR 82-62, 1982 WL 31386 at *1.  This comment relates to the "subsequent explanation in the rule of the 'duration' requirement."  *See Jozefowicz v. Heckler*, 811 F.2d 1352, 1356 (10th Cir. 1987).  Under Social Security Ruling 82-62,  "[d]uration refers to the length of time during which the

person gained job experience.  It should have been sufficient for the worker to have learned the techniques, acquired information, and developed the facility needed for average performance in the job situation.  The length of time this would take depends on the nature and complexity of the work." SSR 82-62 at *2.  In *Jozefowicz*, the Tenth Circuit found that eight months of work was long enough to meet the duration requirement and therefore did not qualify as sporadic activity. In this case, Troutman worked as an advertising distributor from 1985-1989, long enough for her to learn to do the job.

## Materiality of Alcohol Abuse

Troutman contends that the ALJ's finding that her medical problems were the result of her prolonged severe alcohol abuse is partially true but does not reflect the complexity of her condition.  Pl.'s Mem. in Supp. of Mot. to Reverse at 5.   For example, Troutman claims her asthma is clearly not a function of alcohol use.  However, the ALJ found that Troutman's asthma condition [did] not meet or equal Listing 3.03 (Respiratory System– Asthma), had not required hospitalization, and was stable.  Tr. 19.  Substantial evidence supports this finding.

Troutman next argues that her organic brain syndrome, which was found to be secondary to her alcohol abuse, is not likely to disappear, irrespective of her drinking habits.  According to Troutman, Dr. Sandra Montoya's evaluation indicates that "she cannot perform full-time work" and therefore the "ALJ's finding to the contrary should be reversed."  Pl.'s Mem. in Supp. of Mot. to Reverse at 7.

In his decision, the ALJ found Troutman's organic brain syndrome did not meet or equal Listing Section 12.02 and imposed only slight limitations in her activities of daily living and social functioning, and that she seldom experienced deficiencies in concentration, persistence, and pace.

Tr. 19.  Dr. Montoya, a clinical neuropsychologist, found Troutman "sustained mild organic brain syndrome, secondary to the severe alcohol abuse."  Tr. 192.  Dr. Montoya's evaluation indicated in part as follows:

**Intellectual Functions:**

Ms. Troutman was administered the Wechsler Adult Intelligence Scale-Third Edition (WAIS-III).  She earned a Verbal Scale IQ of 95 (37th percentile), a Performance Scale IQ of 90 (25th percentile), and a Full Scale IQ of 93 (32nd percentile). Measured intellectual abilities are in the normal range.  Verbal abilities are uniformly in the normal range.  Verbal abilities are intact.  Visuo-spatial abilities are generally intact.  However, Ms. Troutman had significant difficulty on one measure that required her to replicate 3-dimensional designs.  Performance on this measure was in the borderline impaired range, likely secondary to long-term alcohol abuse.  With the exception of this area of weakness, her general intellectual abilities are intact and in the normal range.

**Memory Functions:**

Learning through rote repetition was in the high average range.  Ability to learn and remember information presented in story format was also in the above average range.  Visual memory was a strength with performance in the superior range, and at the 98th percentile.  Memory functions are intact, and have not been damaged by the severe alcohol abuse.

**Academic Achievement:**

Ms. Troutman's reading comprehension and spelling abilities were at the high school graduate level.  These findings again indicate her past intellectual abilities were in the normal range.  Mathematics was a mild weakness, with performance in the lower end of the average range.  Academic abilities are intact, and consistent with those expected from an individual with normal intelligence.

**Neuropsychological Functions:**

Verbal fluency was in the high average range, with performance at the 80th percentile.  There was no evidence of expressive or receptive language disorders on a brief language screen.  Measures sensitive to frontal lobe functions were in the normal range.  Ms. Troutman had mild difficulty on a measure of memory for complex visual material, although her final performance was in the low average range.  By contrast, Ms. Troutman

7

> had serious deficits on a measure of complex problem solving.  She could not benefit from
> external feedback in solving the problems, and persisted in making the same errors.  She
> could not think of new ways to approach the problem, and continued to try ineffective
> methods.  Her thinking on this measure was extremely concrete, and her performance was
> in the impaired range.  The problem-solving deficits are probably due to the history of
> prolonged alcohol abuse.  Remaining neuropsychological functions are intact.

Tr. 191-92.  Dr. Montoya concluded that Troutman had problems with "complex visuo-spatial tasks, and deficits in solving new or complex problems," and "would have trouble learning complex information, and/or generalizing this information to new situations."  *Id.*  However, Dr. Montoya found that "in spite of these difficulties, there was no evidence in testing that Troutman would not be competent to manage her own affairs."  *Id.*  Dr. Montoya also found that Troutman's memory and judgment were intact and that she was able to perform most of the demands of her daily living.  *Id.*  Dr. Montoya further opined the Troutman would "have to find work in which she is closely supervised until the job demands become familiar to her."  *Id.*

Dr. Montoya's evaluation indicates Troutman was capable of working once she became familiar with the demands of her particular job.  Dr. Montoya's evaluation supports the ALJ's finding that Troutman could perform her past relevant work as advertising distributor,  a job she had done for several years and thus familiar with its demands.

Troutman also contends that the fact that the evaluation was done to assess her "ability to live independently" is "not a ringing endorsement of her ability to function in the workplace."  Pl.s' Mem. in Supp. of Mot. to Reverse at 5.  Dr. Montoya's evaluation indicates the concern was Troutman's ability to "live independently without receiving government benefits."  Tr. 190.

Finally, Troutman contends that the agency's regulations direct "that if the effects of a claimant's mental illness could not be separated from the effects of substance abuse, the abuse

would be found not to be a contributing factor material to the disability determination."  Pl.'s Mem. in Supp. of Mot. to Reverse at 5.  Troutman argues that her "organic brain syndrome asthma, COPD, and various other maladies render her unable to function whether she is drinking or not."  *Id.*  Accordingly, Troutman contends that the ALJ's finding that she can perform simple, unskilled work such as her past relevant work, provided she does not abuse alcohol avoided the relevant inquiry.  The Court disagrees.  The regulations make clear that a finding of disability is a condition precedent to finding that alcoholism is a contributing factor material to the finding of disability.  *See* 42 U.S.C. § 423(d)(2)(C).  In this case, the ALJ found Troutman was not disabled. Therefore, he did not have to apply § 423(d)(2)(C) to this case.

The ALJ considered all of Troutman's impairments and found at step four of the sequential evaluation process that she was not disabled because she could perform work she had done in the past.  Substantial evidence supports this finding.

A judgment in accordance with this Memorandum Opinion will be entered.

DON J. SVET
UNITED STATES MAGISTRATE JUDGE